| | |
|---|---|
| FRANK C. GENTSCH, | CASE NO. CV F 09-0649 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANT'S F.R.Civ.P. 12(b)(6) MOTION TO DISMISS** |
| vs. | (Doc. 8.) |
| OWNIT MORTGAGE SOLUTIONS INC., et al., | |
| Defendants. | |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

## INTRODUCTION

Defendant Litton Loan Servicing, LP ("Litton") seeks to dismiss as frivolous pro se plaintiff Frank C. Gentsch's ("Mr. Gentsch's") claims arising from non-judicial foreclosure of his home. Mr. Gentsch filed no timely papers to oppose Litton's dismissal. This Court considered Litton's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the May 27, 2009 hearing, pursuant to Local Rule 78-230(c), (h). For the reasons discussed below, this Court DISMISSES this action against Litton.

## BACKGROUND

### Mr. Gentsch's Home Loan And Default

On June 20, 2006, Mr. Gentsch executed $156,000 and $39,000 promissory notes ("promissory notes") payable to defendant lender Ownit Mortgage Solutions, Inc. ("Ownit") to purchase his Reedley, California residence ("property"). The promissory notes were secured by first and second deeds of trust

1

("DOTs") encumbering the property and recorded on June 27, 2006.[1]

After a few years, plaintiff defaulted on his loans. On November 25, 2008, defendant Quality Loan Service Corp. ("Quality"), as trustee under the first DOT, recorded a default notice ("default notice") which stated that the defaulted amount was $6,378.11 and which invited Mr. Gentsch to contact Litton, the servicer of his loans, to discuss foreclosure alternatives. The default notice stated that in compliance with California Civil Code section 2923.5, unsuccessful attempts had been made to contact Mr. Gentsch to discuss foreclosure alternatives. In his complaint, Mr. Gentsch acknowledges the contacts but claims defendants "could do nothing for the Plaintiff except to state they were denying the request and proceeding with default and foreclosure."

On February 27, 2009, Quality recorded a trustee's sale notice to set a March 18, 2009 sale of the property. Mr. Gentsch filed his complaint on March 13, 2009 to put the property sale "on hold."

## Mr. Gentsch's Claims

Mr. Gentsch's complaint comprises 35 rambling, mostly incoherent pages with no separate causes of action. Litton describes the complaint as "indecipherable claims against anyone with any connection to his mortgage loan or the foreclosure proceedings."

The complaint appears to attempt to allege the following notions:

1. Mr. Gentsch's loans are invalid as lacking legal tender in that the transaction "was merely a change of currency (without authorization)" and the "bank never made the loan, but kept the mortgage note the alleged borrower signed";

2. Litton and the other defendants lack authority to foreclose because they do not possess the original promissory notes ("Plaintiff is requesting as to who has the original signed, and sealed Promissory Note executed by Plaintiff in reference to the 'property' and this must be answered.");

3. Litton and the other defendants violated California Civil Code section 2923.5 by failing to modify Mr. Gentsch's loan ("Apparently they could do nothing for the Plaintiff except to state they were denying the request and proceeding with default and foreclosure to sell

---

[1] All documents pertaining to Mr. Gentsch's loans and default were recorded with the Fresno County Recorder.

2

the property."); and

4. Litton and the other defendants violated various federal statutes, including the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq., the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., and 42 U.S.C. § 1983.

## **DISCUSSION**

### **Pleading And F.R.Civ.P. 12(b)(6) Motion Standards**

Litton faults the complaint's failure to satisfy pleading requirements and its assertion of frivolous claims.

F.R.Civ.P. 8 requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief." To comply with F.R.Civ.P. 8, a plaintiff "must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

3

the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from

surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). As such, this Court may consider Mr. Gentsch's pertinent loan documents.

**Failure To Satisfy F.R.Civ.P. 8**

Litton's initial attack is that the complaint globally fails to satisfy F.R.Civ.P. 8 to warrant its dismissal.

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957); *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Although a complaint need not outline all elements of a claim, "[i]t must be possible . . . for an inference to be drawn that these elements exist." *Walker v. South Central Bell Telephone Co.*, 904 F.2d 275, 277 (5th

---

[2] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

5

Cir. 1990); *Lewis v. ACB Business Service, Inc.*, 135 F.3d 389, 405-406 (6th Cir. 1998). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649.

Litton is correct that the 35-page complaint is a "hodgepodge of assorted economic theories and case law" which fails to satisfy F.R.Civ.P. 8. The complaint is redundant and excessive and lacks relevant facts to support valid, cognizable legal theories. The complaint fails to give Litton and the other defendants fair notice of claims plainly and succinctly to warrant the complaint's dismissal.

## **Vapor Money**

Litton characterizes Mr. Gentsch's primary claim as a "vapor money" theory in that Mr. Gentsch claims that his loans were not made in "legal tender" and Ownit, the loans' originator, improperly created the money through deceptive "bookkeeping entries." The complaint asserts that Mr. Gentsch did not receive consideration for the loans in that the loans were made in credit, not cash, to render them "credit money" or "checkbook money."

Litton notes that the "vapor money" theory is "nonsense" in that "[r]easoning on the most fundamental level, a level which requires more common sense than legal acumen, plaintiffs' theory is absurd. A check issued by a mortgagee need not be 'legal tender' for the loan to be valid." *Thiel v. First Federal Sav. & Loan Ass'n of Marion*, 646 F.Supp. 592, 595 (N.D. Ind. 1986).

Litton points to *Nixon v. The Individual Head of St. Joseph Mortgage Co.*, 615 F.Supp. 898, 899-900 (N.D. Ind. 1985), where plaintiff claimed his lender "failed to have lawful money (in gold and silver coin) in its vault to equal the amount of the loan, so that it did not loan dollars to [plaintiff] Nixon (as promised) but mere 'credit or checkbook money'" to render the lender's credit illegal tender "as only government-issued currency is legal tender." The fellow district court found the plaintiff's "arguments and claims absurd" in that:

1. A "check issued by a bank or mortgage company need not be 'legal tender' for a loan to be valid";

2. Whether "money was in the vault or not, the check issued by the [lender] had the same

|   |   | effect: it allowed Nixon to buy his house"; |
|---|---|---|
|   | 3. | Although "the check was not legal tender in the sense of a dollar bill or coins, it nevertheless had many of the same qualities of negotiability"; |
|   | 4. | A "bank or mortgage company check can be converted into legal tender"; |
|   | 5. | The lender's "check is like a promise to pay legal tender, redeemable at many banks or financial institutions"; and |
|   | 6. | The "market place recognizes the value of 'credit and checkbook money," so that Nixon has suffered no damages and has no valid claim to advance here." |

*Nixon*, 615 F.Supp. at 900-901.

Ultimately, the district court found that plaintiff's "lawsuit smacks of bad faith" in that after foreclosure proceedings, plaintiff "suddenly files this suit seeking in effect to have the loan *with which he obtained his residence* declared illegal so as to back out of his contractual promise to pay the loan." *Nixon*, 615 F.Supp. at 900-901 (italics in original).

Litton argues that Mr. Gentsch's "vapor money" claims are likewise "meritless" in that Mr. Gentsch voluntarily obtained his loans and received the loans' benefits to satisfy the property's seller to enable Mr. Gentsch to purchase the property. Moreover, "there is no requirement that a loan must be made with legal tender before a court will deem it valid." *Rene v. Citibank NA*, 32 F.Supp.2d 539, 544 (E.D.N.Y. 1999).

Litton is correct that Mr. Gentsch's "vapor money" claims are meritless. Like the plaintiff's arguments in *Nixon*, Mr. Gentsch's notions are absurd to warrant dismissal of his claims.

### **Holder Of The Promissory Notes**

Litton faults the complaint's claim that foreclosure is unavailable in absence of possession of the original promissory notes in that physical possession of original promissory notes is not required to initiate non-judicial foreclosure.

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under California

Civil Code sections 2924-2924l:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

Litton is correct that "California Courts have repeatedly held that California's nonjudicial foreclosure statutes are comprehensive and have refused to impose requirements not found in the statute." The complaint points to no error in the non-judicial foreclosure process. Similar to Mr. Gentsch's "vapor money" claim, his promissory notes possession claim fails as meritless.

### California Civil Code Section 2923.5

The complaint appears to claim that Litton violated California Civil Code section 2923.5 ("section 2923.5"), which requires a lender or its agent to attempt to contact a defaulted borrower prior to foreclosure. Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section 2923.5(b) requires a default notice to include

8

a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

The complaint acknowledges contacts to address foreclosure alternatives. The record reveals that the default notice for Mr. Gentsch's property included the necessary declaration to satisfy section 2923.5. Litton correctly notes that the complaint alleges no cognizable claim that Litton was required to modify Mr. Gentsch's loans in that Section 2923.5 imposes no such mandate. Section 2923.5 requires only contacts or attempted contacts to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *See* Cal. Civ. Code, § 2923.5(a)(2). An alleged section 2923.5 claim fails.

**Federal Statutes**

Litton notes that the complaint's "scattershot allegations" of violations of federal statutes are unsupported with facts. Litton argues that the complaint lacks "facts that would make any of his hypothetical statutory claims against Litton plausible."

*Fair Debt Collections Practices Act*

The complaint appears to allege that non-judicial foreclosure of the property violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Litton points out that the FDCPA does not apply to non-judicial foreclosure.

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985). The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. 1962a(6)(F). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208.

Litton notes that a FDCPA claim fails in absence of an allegation that Litton, a mortgage servicing company, acquired a loan when it was in default. Moreover, even if Litton was a debt

collector, "foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002). As the fellow district court in *Hulse*, 195 F.Supp.2d at 1204, explained:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.
>
> . . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

The complaint does not, and is unable under the stated facts, to allege a FDCPA claim.

### *Real Estate Settlement Procedures Act*

Litton notes that since it neither originated nor was involved in settlement of Mr. Gentsch's loans, Litton is not subject to purported claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq. Litton points out that the complaint fails to allege facts to support a claim against it as a loan servicer under 12 U.S.C. § 2605.

"RESPA requires mortgage lenders to disclose the costs associated with real estate closings." *Bloom v. Martin*, 77 F.3d 318, 320 (9th Cir. 1996) (citing 12 U.S.C. § 2601). "The statute was enacted to allow consumers to be better informed and avoid 'unnecessarily high settlement charges caused by certain abusive practices.'" *Bloom*, 77 F.3d at 320 (citation omitted). Moreover, the "structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations." *Bloom v. Martin*, 865 F.Supp. 1377, 1384-1385 (N.D. Cal. 1994), *aff'd*, 77 F3d 318 (1996).

Litton is not subject to a RESPA claim, and the complaint alleges nothing to suggest otherwise or to warrant an attempt at amendment.

### *Truth In Lending Act*

Litton points to the absence of a valid claim under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq.

15 U.S.C. § 1641 addresses TILA liability for assignees of loans and provides in pertinent part:

(f) Treatment of servicer

> (1) In general
>
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

15 U.S.C. § 1602(f) limits the term "creditor" to "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."

Litton correctly notes that it merely serviced Mr. Gentsch's loan and thus is not a creditor subject to TILA liability. Since Litton did not originate Mr. Gentsch's loan, its only potential TILA liability is as an assignee, a role which the complaint fails to allege of Litton. Moreover, a TILA damages claim is barred by the one-year limitations period of 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). Mr. Gentsch consummated his loans in June 2006, several years prior the March 2009 filing of his action. The complaint alleges no viable TILA claim against Litton.

### *42 U.S.C. § 1983*

Using Litton's words, the complaint "makes the remarkable claim the foreclosure somehow violated [Mr. Gentsch's] rights under 42 U.S.C. § 1983 [('section 1983')]."

The "ultimate issue" to determine whether a person is subject to a section 1983 action is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The United States Supreme Court has adopted a two-part test to address whether infringement is attributable to the state:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State: These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744 (1982).

A private remedy such as non-judicial foreclosure does not involve state action to invoke a section 1983 claim. *Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003); *Charmicor v. Deaner*, 572 F.2d 694, 696 (9th Cir. 1978) (source of the non-judicial foreclosure " right is not conclusive as to state action"). "California's nonjudicial foreclosure procedure does not constitute state action and is therefore immune from the procedural due process requirements of the federal Constitution." *Garfinkle v. Superior Court*, 21 Cal.3d 268, 281, 146 Cal.Rptr. 208 (1978).

Litton correctly explains that non-judicial foreclosure proceedings do not constitute state action to bar Mr. Gentsch's section 1983 claims.

In addition, the complaint fails to substantiate that Litton is a state actor. "When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 835 (9th Cir. 1999); *see Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir.1991) ("[P]rivate parties are not generally acting under color of state law.") "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985 (1999) (citation and internal quotation marks omitted).

As a private actor, Litton is subject to no section 1983 claim.

In light of dismissal of this action against Litton, this Court need not address Litton's alternative F.R.Civ.P. 12(e) motion for a more definite statement.

/ / /

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against defendant Litton Loan Servicing, LP;

2. DIRECTS the clerk to enter judgment in favor of defendant Litton Loan Servicing, LP and against plaintiff Frank C. Gentsch; and

3. ORDERS Mr. Gentsch, no later than May 22, 2009, to file papers to show cause why this Court should not dismiss this action against defendants Ownit Mortgage Solutions, Inc., Quality Loan Service Corp., and LSI Title Company.

**This Court ADMONISHES Mr. Gentsch that if he fails to comply with this order and fails to show cause why defendants Ownit Mortgage Solutions, Inc., Quality Loan Service Corp., and LSI Title Company should not be dismissed, this Court will dismiss this action against defendants Ownit Mortgage Solutions, Inc., Quality Loan Service Corp., and LSI Title Company.**

IT IS SO ORDERED.

**Dated: May 14, 2009**          /s/ Lawrence J. O'Neill
                                  UNITED STATES DISTRICT JUDGE